People of Puerto Rico, Plaintiff and Appellee, *v.* Israel Román Calero, Defendant and Appellant. People of Puerto Rico, Plaintiff and Appellee, *v.* Israel Román Calero, Defendant and Appellant. People of Puerto Rico, Plaintiff and Appellee, *v.* Israel Román Calero, Defendant and Appellant.

Nos. 4300, 4304, and 4305. Argued May 7, 1931.—Decided July 14, 1931.

621

*Buenaventura Esteves* for appellant. *R. A. Gómez* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

Three appeals were heard together. In No. 4304 the appellant was charged with having attempted the life of Agustín Jiménez with knuckles; in No. 4305 in having attempted the life of Adolfo Méndez with a sharp and cutting weapon, and in No. 4300 with having carried prohibited weapons, namely, knuckles (*manopla*) and a dagger (*puñal*). In Nos. 4304 and 4305 the cases were tried before a jury, and in each of them the defendant was found guilty of an aggravated assault and battery.

In all three of these cases the question is raised that the judgment was against the evidence. It tended to prove that the appellant did in fact attack Agustín Jiménez with knuckles and did in fact attack Adolfo Méndez with a knife. Generally, where there is a conflict in the evidence as here, the verdict of the jury or of the judge will not be reviewed, unless we are satisfied that the verdict or judgment is against the evidence. *People* v. *Colón, ante,* pp. 52, 55, citing from the dissenting opinion in *People* v. *Ortiz,* 22 P.R.R. 630. We shall, however, refer to certain matters in case No. 4304.

The appellant maintained that the evidence tended to show that the weapon was not knuckles. The defendant himself testified that he used a scissors. A doctor gave tes-

timony tending to show that from the nature of the injury the wound could not have been produced by knuckles. Also the defendant insists that knuckles are not made of nickel and, hence, the witnesses were mistaken when they said that on a dark night they could see the reflection of a white metal. The jury had a right to weigh the testimony of the doctor along with other matters and, nevertheless, had a right to believe the witnesses when they said they saw the knuckles. The opinion of the doctor did not exclude the possibility that the wound could have been produced by such knuckles. We have not found in the record any statement of anyone that the knuckles could not be made of nickel, instead of copper or brass, and indeed we have heard that a certain class of knuckles are made of nickel, all of which tends to show that a jury is not necessarily bound by the opinion of an expert. The possibility is not excluded that the witnesses were mistaken in their description of the weapon but nevertheless saw it. All of these matters were for the jury.

Furthermore, the defendant testified that he used a scissors and inflicted the wounds. The wounds were rather serious or capable of being so. Under the law (Laws of 1904, pages 48 *et seq.*), "an assault and battery becomes aggravated when committed with premeditated design and by the use of means calculated to inflict great bodily injury." As the defendant was charged with an attempt at manslaughter and convicted of aggravated assault and battery, the use of a scissors might be the very thing that reduced the crime to the lesser offense. The proof that it was a scissors instead of knuckles, would be a harmless variance. Considering the nature of the verdict, the weapons used are sufficiently similar. 30 C. J., pages 135 *et seq.*

Other errors were assigned in No. 4304, the case of assault and battery against Agustín Jiménez. The witness Dámaso Alfaro referred not only to the attack on Agustín Jiménez, but also to the attack on Adolfo Méndez. The defendant moved to strike on the ground that the attack on

Méndez was not relevant to the attack on Jiménez. The court properly decided that it was all a part of the *res gestae*. The attack on Méndez took place immediately after the attack on Jiménez.

Guillermina Méndez had testified; her testimony takes up three or four pages of the typewritten record and she had answered on specific questions put to her by the district attorney. At the close of her testimony the defendant said: "How about it? Tell me what happened." The prosecuting attorney objected to the form of the question evidently as being a too general one. The court held that the witness might be examined specifically to any extent in connection with the direct examination and she might even be examined as to things that would hurt her, and that the defendant might attack her credibility in either way, but that it was not the proper form merely to ask the witness to repeat her testimony. The court has discretion in these matters and could readily see that it was unnecessary to have the witness attempt to reproduce in this way her whole testimony which had been elicited from her by a number of specific questions. We find neither error nor prejudice.

A witness gave what might be called corroborating evidence of what some of the persons had said as to how they arrived at the place where the offense took place. The defense moved to strike and the failure of the court to accede was neither error nor prejudice.

In No. 4305 the court also refused to strike out some testimony that formed part of the *res gestae*. The assignment merits no special discussion.

In No. 4300 the assignment is that the judgment was against the evidence, which we have discussed at the beginning.

The judgments should all be affirmed.